FILED IN CLERKS OFFICE
U.S.D.C. Atlanta

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NOV 0 1 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| MARIE JUSTEEN MANCHA, through her Next Friend Maria Christina Martinez, MARIA CHRISTINA MARTINEZ, RANULFO PEREZ, MARIA MARGARITA MORALES, GLADIS ALICIA ESPITIA, individually and on behalf of all others similarly situated, and DAVID ROBINSON, <br><br> Plaintiffs, <br><br> v. <br><br> IMMIGRATION AND CUSTOMS ENFORCEMENT, MICHAEL CHERTOFF, JULIE L. MYERS, MARCY FORMAN, KENNETH A. SMITH, GREGORY L. WIEST, JOHN P. TORRES, JOHN MATA, and JOHN DOES 1-30, <br><br> Defendants. | CASE NO. _____ <br><br> **1:06-CV-2650** <br><br> **TWT** <br><br><br> <u>**COMPLAINT – CLASS ACTION**</u> |

<u>**INTRODUCTION**</u>

1.    This action challenges a series of raids conducted by federal immigration authorities in Southeast Georgia over the course of at least two weeks in September, 2006, that trampled on the constitutional rights of every person of Hispanic descent unfortunate enough to get in the way. The campaign against the Latino community was conducted ostensibly to locate certain named

undocumented workers who had previously been employed at the Crider poultry facility in Stillmore, Georgia. However, the scope of the campaign went far beyond that. Casting the fundamental protections of the Fourth Amendment aside, federal agents entered and searched private homes without any lawful authority to do so, detained and interrogated people merely because they looked "Mexican," used excessive and wholly unnecessary force against some of the persons they detained, and destroyed private property without cause. All of these unconstitutional actions were taken in an effort to drive the Latino community out of Southeast Georgia.

2.     The raids were the product of racial and ethnic profiling at odds with the fundamental premise of the Equal Protection Clause of the Fifth Amendment and in conflict with the basic values this country was founded upon. The named plaintiffs are U.S. citizens who were victimized by these unconstitutional actions solely because they appeared to be "Mexican" to federal agents who failed to give even lip service to the protections of the Constitution and their oath of office.

3.     Upon information and belief, the raids were authorized by federal government officials at the highest levels of Immigration and Customs Enforcement.

4.     Plaintiffs seek injunctive and declaratory relief to prevent such egregious unconstitutional actions from occurring again in their communities. The

2

named plaintiffs also seek damages under the Constitution for the injuries they have suffered.

## JURISDICTION AND VENUE

5.      Jurisdiction of the Court is predicated upon 28 U.S.C § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (jurisdiction to compel an officer to perform a duty owed to Plaintiffs), 28 U.S.C. § 1343 (civil rights and equal protection), and 28 U.S.C. §§ 2201-02 (Declaratory Judgment Act).

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (e)(1) because a defendant in this action resides in this district.

## PARTIES

7.      Plaintiff **MARIE JUSTEEN MANCHA** ("Plaintiff Mancha") is a Latina teenager who is a native and citizen of the United States. At all times relevant to this suit, she was a resident of Reidsville, Tattnall County, Georgia. She appears in this suit through her Next Friend and mother Maria Christina Martinez.

8.      Plaintiff **MARIA CHRISTINA MARTINEZ** ("Plaintiff Martinez") is a Latina woman who is a native and citizen of the United States. At all times relevant to this suit, she was a resident of Reidsville, Tattnall County, Georgia. Plaintiff Martinez appears in this suit as both a plaintiff in her individual capacity and as Next Friend for her daughter, Plaintiff Marie Justeen Mancha, a minor

3

child. Plaintiff Martinez has the authority to act as Next Friend for Plaintiff Mancha pursuant to Rule 17(c) of the Federal Rules of Civil Procedure.

9.     Plaintiff **RANULFO PEREZ** ("Plaintiff Perez") is a Latino man who is a native and citizen of the Unites States. At all times relevant to this suit, he was a resident of Adrian, Emanuel County, Georgia.

10.    Plaintiff **MARIA MARGARITA MORALES** ("Plaintiff Morales") is a Latina woman who is a native and citizen of the United States. At all times relevant to this suit, she was a resident of Oak Park, Emanuel County, Georgia.

11.    Plaintiff **GLADIS ALICIA ESPITIA** ("Plaintiff Espitia") is a Latina woman who is a native and citizen of the United States. At all times relevant to this suit, she was a resident of Oak Park, Emanuel County, Georgia.

12.    Plaintiff **DAVID ROBINSON** ("Plaintiff Robinson") is a native and citizen of the United States. At all times relevant to this suit, he was a resident of Metter, Candler County, Georgia.

13.    Defendant **IMMIGRATION AND CUSTOMS ENFORCEMENT** ("Defendant ICE") is a bureau of the United States Department of Homeland Security. Defendant ICE is charged with investigative and enforcement responsibilities of federal immigration laws.

14.    Defendant **MICHAEL CHERTOFF** ("Defendant Chertoff") is the Secretary of the United States Department of Homeland Security. Defendant

4

Chertoff is charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of Immigration and Customs Enforcement. He is sued in his official capacity.

15.     Defendant **JULIE L. MYERS** ("Defendant Myers") is the Assistant Secretary of Immigration and Customs Enforcement. Defendant Myers is charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of Immigration and Customs Enforcement. She is sued in her official capacity.

16.     Defendant **MARCY FORMAN** ("Defendant Forman") is the Director of the Office of Investigations for Immigration and Customs Enforcement. In this capacity, Defendant Forman is responsible for all aspects of the investigative mission of Immigration and Customs Enforcement, including the supervision of Special Agents, Special Agent-in-Charge offices, and other field offices. As such, she is responsible for the Atlanta-based Special Agent-in-Charge Office and the Savannah-based field office of Immigration and Customs Enforcement. She is sued in her official capacity.

17.     Defendant **KENNETH A. SMITH** ("Defendant Smith") is the Special Agent-in-Charge of the Special Agent-in-Charge Office of Immigration and Customs Enforcement based in Atlanta, Georgia. Defendant Smith is

responsible for the administration and management of all enforcement activities within the geographic boundaries of the Atlanta-based Special Agent-in-Charge Office. As such, he is responsible for the Savannah-based field office of Immigration and Customs Enforcement. Defendant Smith is also responsible for the development, coordination, and implementation of enforcement strategies of Immigration and Customs Enforcement so as to ensure conformance with national policies and procedures within his territory. Defendant Smith is sued in his official capacity.

18. Defendant **GREGORY WIEST** ("Defendant Wiest") is the Resident Agent-in-Charge of the Savannah field office of Immigration and Customs Enforcement. As Resident Agent-in-Charge, Defendant Wiest is responsible for managing enforcement activities within the geographic boundaries of the Savannah field office and is responsible for ensuring all enforcement activities of the Savannah field office are conducted pursuant to national policies and procedures. Upon information and belief, Defendant Wiest was personally involved in and/or personally ordered or authorized the incidents complained of in this lawsuit, and/or Defendant Wiest's improper customs and/or policies directly resulted in the deprivation of the constitutional rights of Plaintiffs as set forth herein. Defendant Wiest is sued individually and in his official capacity.

6

19.     Defendant **JOHN P. TORRES** ("Defendant Torres") is the Director

of the Office of Detention and Removal for Immigration and Customs

Enforcement. In this capacity, Defendant Torres is responsible for the

apprehension, detention, and removal of foreign nationals charged with violations

of immigration law and the supervision of sworn law enforcement officers

assigned to the Detention and Removal field offices, including the field office

based in Atlanta, Georgia. Defendant Torres is sued in his official capacity.

20.     Defendant **JOHN MATA** ("Defendant Mata") is the Director of the

Atlanta-based field office of the Office of Detention and Removal for Immigration

and Customs Enforcement. In this capacity, Defendant Torres is responsible for

the apprehension, detention, and removal of foreign nationals charged with

violations of immigration law within the geographic boundaries of the Atlanta-

based field office. Defendant Mata is sued in his official capacity.

21.     At all times relevant to the incidents complained of in this lawsuit,

**DEFENDANTS JOHN DOES 1-30** were federal law enforcement agents

employed by Defendant Immigration and Customs Enforcement. Defendants were

empowered by law to execute searches and make arrests for violations of federal

law. Defendants John Does 1-30 are sued individually and in their official

capacities.

7

22. Plaintiffs are ignorant of the true names of Defendants John Does 1-30 and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiffs as set forth. Plaintiffs will amend their complaint to state the true names of Defendants John Does 1-30 when they have been ascertained.

23. In committing the acts alleged in this complaint, Defendants John Does 1-30 were acting on behalf of Defendant ICE and within the course and scope of their employment as ICE agents. Furthermore, upon information and belief, Defendants John Does 1-30 were acting under the immediate supervision of Defendants Forman, Smith, Wiest, Torres, and Mata and pursuant to their policies, orders, and/or authorization.

## FACTUAL ALLEGATIONS

### *Plaintiffs Mancha and Martinez*

24. On a weekday morning in early September, 2006, Plaintiff Mancha, a tenth grade high school student, was getting ready for school. Her mother, Plaintiff Martinez, left their home in Reidsville, Georgia, to run an errand.

25. After her mother had left, Plaintiff Mancha heard car doors slamming outside of her home. She believed it was her mother returning, so she went to the front door, unlocked the door, left it closed, and went back to her bedroom.

8

26.     Shortly thereafter, Plaintiff Mancha heard voices coming from within the house. She left her bedroom, and, as she was walking down the hallway towards the living room, she heard people yelling, "Police! Illegals!" When she reached the living room, she saw Defendants John Does 1-5 standing in the living room blocking the front door. Defendant John Doe 1 had his hand on his gun as if he was ready to take it out at any minute.

27.     Plaintiff Mancha became extremely frightened because of the number of unknown men who had broken into her home and because at least one of them had a visible gun.

28.     Plaintiff Mancha saw approximately five other agents on the stairs leading up to her front door and several more outside in her yard. In all, there were approximately 20-25 agents who had either entered or surrounded her home.

29.     Defendants John Does 1-3 interrogated Plaintiff Mancha regarding whether there were other people in the house, whether her mother had worked for Crider Poultry and the reason she had quit, whether her mother was "Mexican," and whether her mother had "papers" or a green card. Plaintiff Mancha told the Defendants that her mother was born in Florida and, therefore, did not need a green card.

30.     When Plaintiff Mancha asked why Defendants were inside of her home, Defendant John Doe 1 told her that they were looking for "illegals."

9

31.     One of the Defendants declared to the other defendants that they would go to the gas station where they were sure to find a lot of "Mexicans." Plaintiff Mancha asked the Defendants if they were leaving, and one of them responded that they were going to be in the area "looking for the rest of them."

32.     After approximately five minutes inside Plaintiffs' home, Defendants finally left without ever showing a warrant authorizing their presence therein.

33.     Plaintiff Martinez returned home to find the Defendants coming from behind her home and leaving from her driveway in more than six vehicles. Plaintiff Martinez grew very concerned and immediately went to check on Plaintiff Mancha, her daughter.

34.     Upon information and belief, Defendants lacked lawful authority for all detention and interrogation activities involving Plaintiff Mancha and did not have a warrant, probable cause and exigent circumstances, or consent to enter Plaintiffs' home.

35.     As a result of Defendants' unlawful actions, Plaintiffs Mancha and Martinez were traumatized, and both continue to suffer to this day.

## *Plaintiff Perez*

36.     On or about September 5, 2006, Plaintiff Perez was standing next to his truck parked on his property in front of his home in Adrian, Georgia, when approximately six to eight vehicles drove into his yard and parked in such a

10

manner as to block the only entrance or exit to Plaintiff Perez' property.
Approximately fifteen agents exited the vehicles. They immediately pulled their
weapons and began to approach Plaintiff Perez and surround his home.

37.     Believing the agents to be immigration officers, Plaintiff Perez
hurriedly declared that he had "papers." Without even asking for Plaintiff Perez'
name, Defendant John Doe 6 grabbed Plaintiff Perez by the front of his shirt,
jammed his gun into Plaintiff Perez' side, and threw him against his truck.
Defendant John Doe 6 then twisted Plaintiff Perez' arm around and held him so
that he could not easily get away.

38.     Defendant John Doe 6 told Plaintiff Perez to stay there and not to
move. Defendant John Doe 6 held Plaintiff Perez in this uncomfortable position
for approximately ten minutes.

39.     Defendant John Doe 6 directed some of the other agents to go into
Plaintiff Perez' home. Approximately three of the Defendants entered and
searched Plaintiff Perez' home – without producing a warrant or asking for
permission. Approximately nine other agents searched around outside the home.

40.     Plaintiff Perez repeatedly told Defendant John Doe 6 that he had
"papers," but Defendant John Doe 6 would not respond. Instead of requesting that
Plaintiff Perez produce his "papers," Defendant John Doe 6 continued to
physically detain Plaintiff Perez.

11

41.    At the end of this ten-minute period, Defendant John Doe 6 asked Plaintiff Perez if he had any weapons on him. Plaintiff Perez told Defendant John Doe 6 that he did not have any weapons and consented to a search for weapons on his person. Defendant John Doe 6 then asked Plaintiff Perez to show his "papers." Plaintiff Perez reached into his pocket, produced his driver's license and social security card, and gave them to Defendant John Doe 6. Defendant John Doe 6 finally released Plaintiff Perez' arm and went to his vehicle. A minute or two later, Defendant John Doe 6 returned with Plaintiff Perez' identification.

42.    Defendant John Doe 6 told Plaintiff Perez that the Defendants were with "immigration" and had been sent by the federal government. He also told Plaintiff Perez that immigration would be in the area for another two weeks and suggested that Plaintiff Perez and his family go elsewhere during that time period so as to avoid any future incidents and entries to their home.

43.    Defendants finally left after approximately thirty to forty minutes.

44.    Upon information and belief, Defendants lacked lawful authority for all detention, interrogation, and arrest activities involving Plaintiff Perez and did not have a warrant, probable cause and exigent circumstances, or consent to enter Plaintiff Perez's home.

12

## *Plaintiff Morales*

45.    On or about September 1, 2006, Plaintiff Morales was driving home from work when she stopped at the post office in the town of Stillmore, Georgia. After she picked up her mail, she got back in her jeep and drove on Old Kenfield Road towards her home.

46.    Plaintiff Morales was driving behind a long line of approximately twelve vehicles when an unmarked car driven by Defendant John Doe 8 pulled to the side, allowing Plaintiff Morales' jeep to pass him. Defendant John Doe 8 then pulled in behind Plaintiff Morales.

47.    All of the cars in front of Plaintiff Morales proceeded to stop in the middle of the road. Defendants John Doe 7 and John Doe 8 put on their blue, blinking hazard lights to signal that Plaintiff Morales should pull over. Plaintiff Morales then stopped her jeep directly behind the vehicle of Defendant John Doe 7, and Defendant John Doe 8 stopped his vehicle very closely behind that of Plaintiff Morales.

48.    Defendants John Doe 7 and John Doe 8 then proceeded to exit their vehicles and walk towards Plaintiff Morales' jeep. Plaintiff Morales remained inside her jeep, and Defendants John Doe 7 and John Doe 8 were standing next to the door of her jeep throughout their interrogation of Plaintiff Morales.

13

49.     Defendant John Doe 8 immediately called Plaintiff Morales a "Mexican" and told her to get out of her jeep. Plaintiff Morales responded that she was born in Texas. Defendant John Doe 7 told her that if she was not "Mexican," then she had to prove it to them. Plaintiff Morales showed them her Georgia driver's license. Defendant John Doe 7 declared that the driver's license was "false" and again ordered Plaintiff Morales out of her jeep. He then reached in through the open window, grabbed Plaintiff Morales' arm, and pulled her towards him. He repeatedly accused Plaintiff Morales of being a "Mexican" and ordered her out of her jeep. Defendants John Does 7 and 8 continued to interrogate her regarding her identification, her citizenship, where she was coming from, and where she was going. They falsely claimed that they had seen her in town motioning to "Mexicans," and repeatedly asked her whether she knew any "Mexicans." Plaintiff Morales insisted that her driver's license was not false and that she could take the Defendants to the Georgia State Patrol's office to prove to them that she was a citizen so that they would let her go.

50.     Finally, Defendants John Doe 7 and John Doe 8 allowed Plaintiff Morales to leave the scene. However, they told Plaintiff Morales that she could not continue driving on that road in the direction she had been heading. They said it did not matter that she lived in that direction; they told her that she would not be able to continue down that road until after the agents had finished their business

14

and returned to the town of Stillmore. They also ordered her not to make any phone calls and not to tell anyone that "immigration" was in town.

51.    Plaintiff Morales' unlawful detention lasted approximately fifteen to twenty minutes before Plaintiff Morales was forced to return to town in order to make her way home using an alternate route.

52.    Upon information and belief, Defendants lacked lawful authority for all detention and interrogation activities involving Plaintiff Morales.

## *Plaintiff Espitia*

53.    On or about September 2, 2006, Plaintiff Espitia was inside her home in Oak Park, Georgia, visiting with members of her family when approximately eighteen vehicles drove into her yard and parked in her driveway and on either side of her home. Over twenty agents exited the vehicles and covered Plaintiff Espitia's yard.

54.    Some of the Defendants began to handcuff and detain Plaintiff Espitia's family members who were outside in the yard, while other Defendants approached Plaintiff Espitia's home, knocked on the door, and yelled for someone to open the door. At least one of the Defendants threatened to break down the door and throw "gas" inside the home if Plaintiff Espitia and her family did not comply with their orders.

15

55.     Plaintiff Espitia and her family members were very frightened and did not open the door. Several of Plaintiff Espitia's family members took the young children and ran to hide in a bedroom. The Defendants then forcefully broke through the front door, causing damage to the door frame and lock.

56.     Many of the Defendants poured into Plaintiff Espitia's home and began to search through it. As they made their way through the home, some of the Defendants continued making threats to use "gas" in an effort to scare Plaintiff Espitia's family members out of the bedroom.

57.     The Defendants did not identify themselves as "immigration" officers until after they had already forcefully entered the home, and they never produced a warrant authorizing their presence inside Plaintiff's home.

58.     One of the Defendants led one of Plaintiff Espitia's family members outside, and Plaintiff Espitia followed them. While Plaintiff Espitia was trying to console her family members, Defendant John Doe 9 approached her, took her hand, and pulled his handcuffs from his belt in an attempt to take her into custody. He did so without ever asking for Plaintiff Espitia's name or immigration status. Plaintiff Espitia told him that she had papers in her car to prove her citizenship.

59.     Defendant John Doe 9 let go of Plaintiff Espitia's hand and allowed her to proceed to her car, but told her to open her car door slowly. Plaintiff Espitia complied with his demand and retrieved her social security card and gave it to the

16

Defendant. He left to verify its validity and eventually returned the card to Plaintiff Espitia and told her that she had a valid social security number.

60.    Plaintiff Espitia then went back inside her home, where Defendant John Doe 10 then interrogated Plaintiff Espitia and some of her family members for approximately twenty minutes.

61.    Upon information and belief, Defendants lacked lawful authority for all detention and interrogation activities involving Plaintiff Espitia and did not have a warrant, probable cause and exigent circumstances, or consent to enter Plaintiff Espitia's home.

62.    Plaintiff Espitia was approximately six months pregnant at the time of this raid. As a result of Defendants' unlawful actions, Plaintiff Espitia was traumatized, and she continues to suffer to this day.

### *Plaintiff Robinson*

63.    Plaintiff Robinson owns two trailer parks in the Metter, Georgia, area that were raided by ICE agents in early September, 2006. Plaintiff Robinson's trailer park located on Turkey Ridge Road ("Turkey Ridge Road Park") was raided on or about September 7. His second trailer park located on Highway 46 ("Highway 46 Park") was raided on two separate occasions – once on or about September 3 and again on or about September 5.

17

64.    The ICE agents involved in the raids forcefully broke into many of the trailers in Plaintiff Robinson's parks. The ICE agents caused intentional damage to at least one door and four windows in the Highway 46 Park. In the Turkey Ridge Road Park, the ICE agents ripped the skirting from the perimeter of a trailer and caused damage to the floorboards.

65.    Upon information and belief, Defendants did not have warrants or other legal justification for their actions.

66.    As a result of the unlawful and terrorizing actions of the ICE agents, the tenants who rented from Plaintiff Robinson were so terrified that many simply fled from the area.

## CLASS ACTION ALLEGATIONS

67.    All claims set forth in Counts I and II below are brought by named Plaintiffs Marie Justeen Mancha, Maria Christina Martinez, Ranulfo Perez, Maria Margarita Morales, and Gladis Alicia Espitia, individually and on behalf of all other similarly situated persons, pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, against Defendants for injunctive and declaratory relief.

68.    The named Plaintiffs provisionally propose Counts I and II be certified on behalf of the following class:

All persons of Mexican, Latin, or Hispanic origin or appearance who are within the formal jurisdiction and actual territory covered by Immigration

18

and Customs Enforcement agents who are directed from the Special Agent-in-Charge Office in Atlanta, Georgia.

69.    Members of the proposed class number in the thousands so that joinder of all class members is impracticable.

70.    The Count I claims of the proposed class representatives and those of the proposed class members raise common questions of law and fact concerning, *inter alia*, whether Defendants have implemented, enforced, encouraged and/or sanctioned a policy, practice and/or custom of: (a) entering and searching homes without valid warrants or voluntary consent and in the absence of probable cause and exigent circumstances, in violation of the Fourth Amendment to the United States Constitution; and (b) stopping, detaining, investigating, searching and effecting seizures in the absence of a reasonable, articulable suspicion of unlawful activity or probable cause, in violation of the Fourth Amendment to the United States Constitution.

71.    The Count II claims of the proposed class representatives and those of the proposed class members raise common questions of law and fact concerning, *inter alia*, whether Defendants have implemented, enforced, encouraged and/or sanctioned a policy, practice and/or custom of targeting the named Plaintiffs and class members for stops, detentions, investigations, searches and seizures on the

19

basis of race/ethnicity and/or national origin, in violation of the Equal Protection
Clause of the Fifth Amendment to the United States Constitution.

72.    These questions are common to the named Plaintiffs and to the
members of the proposed class because Defendants have acted and will continue to
act on grounds generally applicable to both the named Plaintiffs and proposed class
members.

73.    The claims of the named Plaintiffs are typical of the claims of the
members of the proposed class.

74.    The named Plaintiffs will fairly and adequately protect the interests of
the members of the plaintiff class.

75.    The Plaintiffs are represented by counsel who are highly experienced
in federal class action litigation involving civil rights issues.

76.    The Defendants have acted on grounds generally applicable to the
plaintiff class, thereby making appropriate final injunctive and corresponding
declaratory relief with respect to the class as a whole.

## CAUSES OF ACTION

### COUNT I: FOURTH AMENDMENT VIOLATIONS
### (Class Action Against All Defendants)

77.    Plaintiffs Mancha, Martinez, Perez, Morales, and Espitia incorporate
by reference each and every allegation contained in the preceding paragraphs as

20

though fully set forth herein.

78. Plaintiffs Mancha, Martinez, Perez, Morales, and Espitia bring this claim for injunctive and declaratory relief on behalf of the proposed class against Defendants to redress continuing and future violations of the Fourth Amendment to the United States Constitution.

79. Upon information or belief, Defendants have implemented, enforced, encouraged and/or sanctioned a policy, practice and/or custom of: (a) entering and searching homes without valid warrants or voluntary consent and in the absence of probable cause and exigent circumstances in violation of the Fourth Amendment to the United States Constitution; and (b) stopping, detaining, investigating, searching and effecting seizures in the absence of a reasonable, articulable suspicion of unlawful activity or probable cause in violation of the Fourth Amendment to the United States Constitution.

80. As a result of the acts and/or omissions of the Defendants, the Fourth Amendment rights of the named Plaintiffs to be free from unreasonable searches and seizures and unlawful entries into their homes have been violated. Moreover, numerous members of the plaintiff class have also been subjected to similar Fourth Amendment violations.

81. The named Plaintiffs and those similarly situated will suffer irreparable and repeated injury unless this Court orders equitable relief. Such

injury includes, *inter alia*, deprivation of their constitutionally protected rights under the Fourth Amendment to the United States Constitution. Damages cannot adequately address the injuries suffered by the named Plaintiffs and the proposed class members.

82.     Compelling the Defendants, their agents, employees and successors in office, and all persons acting in concert with them to comply with the dictates of the United States Constitution does not impose an improper or undue burden on the Defendants, their agents, employees, and successors in office, and others, and, in fact, it serves the public interest by ensuring compliance with well-established constitutional protections.

83.     Plaintiffs are entitled to the issuance of a permanent injunction prohibiting Defendants from engaging in the unlawful, abusive, and discriminatory practices alleged herein.

84.     For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and the Defendants, which parties have genuine and opposing interest, which interests are direct and substantial, and of which a judicial determination will be final and conclusive. This dispute entitles Plaintiffs to a declaratory judgment that the Defendants' denial of Plaintiffs' Fourth Amendment rights and protections, including, but not limited to, the right to be free from unreasonable searches and seizures and the right to be free from unlawful

22

entries into one's home, is unconstitutional. Plaintiffs are also entitled to such
other and further relief as may follow from the entry of such a declaratory
judgment.

## COUNT II: FIFTH AMENDMENT VIOLATIONS
### (Class Action Against All Defendants)

85.    Plaintiffs Mancha, Martinez, Perez, Morales, and Espitia incorporate
by reference each and every allegation contained in the preceding paragraphs as
though fully set forth herein.

86.    Plaintiffs Mancha, Martinez, Perez, Morales, and Espitia bring this
claim for injunctive and declaratory relief on behalf of the proposed class against
Defendants to redress continuing and future violations of the Fifth Amendment to
the United States Constitution.

87.    Defendants have implemented, enforced, encouraged and/or
sanctioned a policy, practice and/or custom of targeting the named Plaintiffs and
class members for stops, detentions, investigations, searches and seizures on the
basis of race/ethnicity and/or national origin, in violation of the Equal Protection
Clause of the Fifth Amendment to the United States Constitution.

88.    As a result of the acts and/or omissions of the Defendants, the named
Plaintiffs' rights to equal protection under the law as guaranteed by the Fifth
Amendment to the United States Constitution have been violated. Moreover,

23

numerous members of the plaintiff class have also been subjected to similar Fifth Amendment violations.

89.   The named Plaintiffs and those similarly situated will suffer irreparable and repeated injury unless this Court orders equitable relief. Such injury includes, *inter alia*, deprivation of their constitutionally protected rights under the Fifth Amendment to the United States Constitution. Damages cannot adequately address the injuries suffered by the named Plaintiffs and the proposed class members.

90.   Compelling the Defendants, their agents, employees and successors in office, and all persons acting in concert with them to comply with the dictates of the United States Constitution does not impose an improper or undue burden on the Defendants, their agents, employees, and successors in office, and others, and, in fact, it serves the public interest by ensuring compliance with well-established constitutional protections.

91.   Plaintiffs are entitled to the issuance of a permanent injunction prohibiting Defendants from engaging in the unlawful, abusive, and discriminatory practices alleged herein.

92.   For reasons including, but not limited to, those stated herein, an actual dispute exists between Plaintiffs and the Defendants, which parties have genuine and opposing interest, which interests are direct and substantial, and of which a

24

judicial determination will be final and conclusive. This dispute entitles Plaintiffs

to a declaratory judgment that the Defendants' denial of Plaintiffs' Fifth

Amendment right to equal protection under the law is unconstitutional, as well as

such other and further relief as may follow from the entry of such a declaratory

judgment.

## COUNT III: *BIVENS* CLAIM OF PLAINTIFF MANCHA
### (Against Defendants Wiest and John Does 1-5 and 11-25)

93.    Plaintiff Mancha incorporates by reference each and every allegation

contained in the preceding paragraphs as though fully set forth herein.

94.    In doing the acts complained of, Defendants Wiest and John Does 1-5

and 11-25 deprived Plaintiff Mancha of certain constitutionally protected rights,

including, but not limited to:

> a. the right to be free from unlawful entries to and searches of her
>    home without a valid warrant or voluntary consent and in the
>    absence of probable cause and exigent circumstances;

> b. the right to be free from detentions without a lawful, reasonable
>    and articulable suspicion of unlawful activity or probable cause;
>    and

> c. the right to equal protection under the law, as guaranteed by the
>    Fifth Amendment to the United States Constitution.

95.     Because these Defendants acted in clear violation of well-settled law, of which a reasonable person would have been aware, with regard to standards for home entry, search, seizure, questioning, and detention, they are not entitled to a good faith defense or official immunity defense.

96.     The actions of these Defendants were intentional, malicious, and reckless and showed a callous disregard of, or indifference to, the rights of the Plaintiff.

97.     The actions of these Defendants give rise to a cause of action for damages against them in their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

98.     As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff Mancha has suffered harm, in the form of, *inter alia*, outrage, humiliation, and emotional distress. Plaintiff Mancha is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT IV: *BIVENS* CLAIM OF PLAINTIFF MARTINEZ
### (Against Defendants Wiest and John Does 1-5 and 11-25)

99.     Plaintiff Martinez incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

26

100.   In doing the acts complained of, Defendants Wiest and John Does 1-5 and 11-25 deprived Plaintiff Martinez of certain constitutionally protected rights, including, but not limited to:

> a.  the right to be free from unlawful entries to and searches of her home without a valid warrant or voluntary consent and in the absence of probable cause and exigent circumstances; and
>
> b.  the right to equal protection under the law, as guaranteed by the Fifth Amendment to the United States Constitution.

101.   Because these Defendants acted in clear violation of well-settled law, of which a reasonable person would have been aware, with regard to standards for home entry and search, they are not entitled to a good faith defense or official immunity defense.

102.   The actions of these Defendants were intentional, malicious, reckless, and showed a callous disregard of, or indifference to, the rights of the Plaintiff.

103.   The actions of these Defendants give rise to a cause of action for damages against them in their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

104.   As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff Martinez has suffered harm, in the form of, *inter alia*, outrage

and emotional distress. Plaintiff Martinez is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT V: *BIVENS* CLAIM OF PLAINTIFF PEREZ
## (Against Defendants Wiest and John Does 6 and 11-24)

105. Plaintiff Perez incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

106. In doing the acts complained of, Defendants Wiest and John Does 6 and 11-24 deprived Plaintiff Perez of certain constitutionally protected rights, including, but not limited to:

> a. the right to be free from unlawful entries to and searches of his home without a valid warrant or voluntary consent and in the absence of probable cause and exigent circumstances;
>
> b. the right to be free from detentions without a lawful, reasonable and articulable suspicion of unlawful activity or probable cause;
>
> c. the right to be free from arrest without probable cause, as guaranteed by the Fourth Amendment to the United States Constitution;
>
> d. the right to be free from the use of excessive force, as guaranteed by the Fourth Amendment to the United States Constitution; and

28

      e. the right to equal protection under the law, as guaranteed by the

      Fifth Amendment to the United States Constitution.

107. Because these Defendants acted in clear violation of well-settled law, of which a reasonable person would have been aware, with regard to standards for home entry, search, seizure, questioning, detention, arrest and use of force, they are not entitled to a good faith defense or official immunity defense.

108. The actions of these Defendants were intentional, malicious, and reckless and showed a callous disregard of, or indifference to, the rights of the Plaintiff.

109. The actions of these Defendants give rise to a cause of action for damages against them in their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

110. As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff Perez has suffered harm, in the form of, *inter alia*, outrage, humiliation, and emotional distress. Plaintiff Perez is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT VI: *BIVENS* CLAIM OF PLAINTIFF MORALES
### (Against Defendants Wiest and John Does 7-8)

111. Plaintiff Morales incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

29

112.   In doing the acts complained of, Defendants Wiest and John Does 7-8 deprived Plaintiff Morales of certain constitutionally protected rights, including, but not limited to:

> a.   the right to be free from detentions without a lawful, reasonable and articulable suspicion of unlawful activity or probable cause; and
>
> b.   the right to equal protection under the law, as guaranteed by the Fifth Amendment to the United States Constitution.

113.   Because these Defendants acted in clear violation of well-settled law, of which a reasonable person would have been aware, with regard to standards for seizure, questioning, and detention, they are not entitled to a good faith defense or official immunity defense.

114.   The actions of these Defendants were intentional, malicious, and reckless and showed a callous disregard of, or indifference to, the rights of the Plaintiff.

115.   The actions of these Defendants give rise to a cause of action for damages against them in their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

116.   As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff Morales has suffered harm, in the form of, *inter alia*, outrage,

humiliation, and emotional distress. Plaintiff Morales is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT VII: *BIVENS* CLAIM OF PLAINTIFF ESPITIA
### (Against Defendants Wiest and John Does 9-30)

117. Plaintiff Espitia incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

118. In doing the acts complained of, Defendants Wiest and John Does 9-30 deprived Plaintiff Espitia of certain constitutionally protected rights, including, but not limited to:

> a. the right to be free from unlawful entries to and searches of her home without a valid warrant or voluntary consent and in the absence of probable cause and exigent circumstances;
>
> b. the right to be free from detentions without a lawful, reasonable and articulable suspicion of unlawful activity or probable cause;
>
> c. the right to be free from the use of excessive force, as guaranteed by the Fourth Amendment to the United States Constitution;
>
> d. the right to be free from unreasonable seizures of property, as guaranteed by the Fourth Amendment to the United States Constitution ; and

31

e. the right to equal protection under the law, as guaranteed by the
Fifth Amendment to the United States Constitution.

119. Because these Defendants acted in clear violation of well-settled law,
of which a reasonable person would have been aware, with regard to standards for
home entry, search, seizure, questioning, use of force, and detention, they are not
entitled to a good faith defense or official immunity defense.

120. The actions of these Defendants were intentional, malicious, and
reckless and showed a callous disregard of, or indifference to, the rights of the
Plaintiff.

121. The actions of these Defendants give rise to a cause of action for
damages against them in their individual capacities, pursuant to *Bivens v. Six
Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

122. As a direct and proximate result of the unlawful actions of these
Defendants, Plaintiff Espitia has suffered harm, in the form of, *inter alia*, outrage,
humiliation, property damage and emotional distress. Plaintiff Espitia is entitled to
actual, compensatory and punitive damages in an amount to be determined at trial.

## COUNT VIII: *BIVENS* CLAIM OF PLAINTIFF ROBINSON
## (Against Defendants Wiest and John Does 11-30)

123. Plaintiff Robinson incorporates by reference each and every allegation
contained in the preceding paragraphs as though fully set forth herein.

124. In doing the acts complained of, Defendants Wiest and John Does 11-30 deprived Plaintiff Robinson of his constitutionally protected right to be free from unreasonable seizures of property, as guaranteed by the Fourth Amendment to the United States Constitution.

125. Because these Defendants acted in clear violation of well-settled law, of which a reasonable person would have been aware, with regard to standards for home entry, search, seizure, and use of force, they are not entitled to a good faith defense or official immunity defense.

126. The actions of these Defendants were intentional, malicious, and reckless and showed a callous disregard of, or indifference to, the rights of the Plaintiff.

127. The actions of these Defendants give rise to a cause of action for damages against them in their individual capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

128. As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff Robinson has suffered property damage. Plaintiff Perez is entitled to actual, compensatory and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court:

1.  Award Plaintiffs Mancha, Martinez, Perez, Morales, Espitia, and Robinson actual, compensatory, and punitive damages for violations of the Fourth Amendment to the United States Constitution;

2.  Award Plaintiffs Mancha, Martinez, Perez, Morales, and Espitia actual, compensatory, and punitive damages for violations of the Fifth Amendment to the United States Constitution;

3.  Certify this case as a class action in accordance with Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to the claims set forth in Counts I and II;

4.  Issue a Declaratory Judgment with respect to the claims set forth in Count I declaring that the actions of Defendants as set forth above violated the Fourth Amendment to the United States Constitution;

5.  Issue a Declaratory Judgment with respect to the claims set forth in Count II declaring that the actions of Defendants as set forth above violated the Fifth Amendment to the United States Constitution;

6.  With respect to the claims set forth in Count I, issue an order permanently enjoining Defendants, their agents, employees, and successors in

34

office and all others acting in concert with them from engaging in the unlawful, abusive and discriminatory actions as set forth above;

7. With respect to the claims set forth in Count II, issue an order permanently enjoining Defendants, their agents, employees, and successors in office and all others acting in concert with them from engaging in the unlawful, abusive and discriminatory actions as set forth above;

8. Award Plaintiffs costs of this action;

9. Award Plaintiffs pre- and post-judgment interest, as permitted by law;

10. Award Plaintiffs reasonable attorneys' fees with respect to their claims set forth in Counts I and II;

11. Grant Plaintiffs other such relief as the Court deems appropriate and just.

Respectfully submitted this 1st day of November, 2006.

Mary C. Bauer
.GA Bar No. 142213
Kelley M. Bruner
*Pro Hac Vice*, AL Bar No. 8115-K74B
Rhonda Brownstein
*Pro Hac Vice*, AL Bar No. 3193-064R
Morris Dees
*Pro Hac Vice*, AL Bar. No. 7003-E50M
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
334-956-8200
334-956-8481 (fax)

Paul L. Hoffman
*Pro Hac Vice*, CA Bar No. 071244
SCHONBRUN DESIMONE SEPLOW
 HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, California 90291
(310) 396-0731
(310) 399-7040 (fax)

Brian Spears
GA Bar No. 670112
LAW OFFICE OF BRIAN SPEARS
1126 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306
(404) 872-7086
(404) 892-1128 (fax)

*Attorneys for Plaintiffs*

By: Brian Spears