**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MARIE JUSTEEN MANCHA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 1:06-CV-2650-TWT |
| IMMIGRATION AND CUSTOMS | ) |
| ENFORCEMENT, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER:  (1)
STAYING DISCOVERY ON THE FTCA CLAIMS;  AND (2) STAYING OR
LIMITING DISCOVERY ON THE *BIVENS* CLAIMS**

The United States of America (the "United States"), defendant in the above-

captioned matter, respectfully submits this memorandum of law in support of this

Motion For Protective Order.

## INTRODUCTION

The United States was added to this case by amendment to the complaint

filed on March 27, 2008.  [*See* Doc. No. 110].  Immediately upon being brought

into this lawsuit, the United States has been required to respond to overbroad and

unduly burdensome discovery requests that do not appear to be calculated to

uncover evidence that would be admissible at a trial on the limited tort claims –

trespass, false imprisonment, assault, and battery – raised by plaintiffs under the

Federal Tort Claims Act ("FTCA"). The convoluted procedural posture of this case

prior to the United States being brought in on the FTCA claims is the reason for the

discovery predicament that the United States now faces. The United States asks the

Court to review the history of this litigation, the discovery requests that plaintiffs

are now making, and the relatively narrow issues actually raised by the claims left

in this case. On that basis, the United States submits that the limitations on

discovery sought by this motion are reasonable and should be imposed.

## SUMMARY OF ARGUMENT

The United States seeks by this protective order to impose limits on

plaintiffs' discovery in two respects:

*First*, a stay of discovery should be granted on the FTCA claims against the

United States. On June 17, 2008, the United States filed a motion to dismiss

plaintiffs recently filed FTCA claims. [Doc. No. 148].   Stays of discovery while a

motion to dismiss is pending are routine – in fact, under this Court's Local Rule

26.2, discovery would not even ordinarily begin where, as here, no answer has been

filed by any defendant in the case. Plaintiffs should not be entitled to discovery on

claims that are legally insufficient, or as to which the Court lacks jurisdiction. The

2

United States should be accorded the same treatment ordinarily given to parties in civil litigation.

*Second*, discovery on plaintiffs' outstanding *Bivens* claims should be limited to identification of the unnamed "John Doe" defendants. Plaintiffs already have received sufficient information for naming these defendants -- in particular, in a Rule 30(b)(6) deposition held on May 13, 2008. As argued in the United States' motion to dismiss, the claims against the "John Doe" defendants should be dismissed.[1] Further discovery on the *Bivens* claims at this time, other than that required to establish the unnamed defendants' identity, is inappropriate because the unnamed defendants are unrepresented. Moreover, such discovery should not occur in any event until after the "John Doe" defendants have been named, served, and provided the opportunity to contest the legal sufficiency of the allegations against them, and, in particular, to bring a motion to dismiss on qualified immunity grounds, if appropriate.

## PROCEDURAL AND FACTUAL BACKGROUND

To understand the current posture of discovery in this case, a brief history is is required.

---

[1] If not dismissed, and should plaintiffs require further information to identify the "John Does," plaintiffs should be limited to requesting that information through a defined number of interrogatories.

3

1.    **The Filing of The Original Complaint, the Defendants' Motions Challenging the Legal Sufficiency of the Complaint, and the Stay of Discovery.**

Plaintiffs filed the original complaint on November 1, 2006. [Doc. No. 1]. The United States was not a named party to this complaint, which raised claims against Immigration and Customs Enforcement ("ICE") and various federal officers acting in their official capacity (collectively "the federal defendants"), arising out of certain activities of ICE to enforce the immigration laws of this country in and around Stillmore, Georgia in September 2006. The original complaint also named Gregory L. Wiest (an ICE Special Agent), in his individual capacity, as well as unnamed agents "John Does 1-30," also in their individual capacities, for alleged violations of plaintiffs' constitutional rights ("the *Biven* claims").

On April 16, 2007, the federal defendants filed a motion to dismiss the complaint. [Doc. No. 26]. Also on that same date, Agent Wiest filed a motion to dismiss, or, in the alternative, motion for summary judgment. [Doc. No. 27]. These motions sought to eliminate all claims in the original complaint except for the *Bivens* claims of the unnamed "John Doe" defendants. On April 27, 2007, the defendants filed a "Motion for Relief From Local Rules 16.1, 16.2, and 26.1." [Doc. No. 30]. The Court granted this motion [Doc. No. 31], effectively staying all discovery while the pending motions were outstanding. While plaintiffs filed

4

various motions essentially objecting to the stay of discovery (*see* Doc. No. 36 and Doc. No. 40], they also, at the same time, filed an amended complaint. [Doc. No. 42]. The First Amended Complaint did not add new substantive claims or new defendants. As a result of the filing of an amended complaint, the parties stipulated to the withdrawal of the pending federal defendants' motion to dismiss and Wiest's motion to dismiss and/or for summary judgment. [Doc. No. 47].

## 2.    **The First Amended Complaint, the Second Round of Motions, and The Continued Stay of Discovery.**

On August 2, 2007, the federal defendants submitted a new motion to dismiss [Doc. No. 54], and defendant Wiest submitted a new motion for summary judgment [Doc. No. 53], both responding to plaintiffs' newly filed First Amended Complaint. These motions, again, sought to eliminate all claims in the First Amended Complaint except for the *Bivens* claims of the unnamed "John Doe" defendants. The discovery stay therefore remained in place. While this second round of motions was outstanding, plaintiffs continued to seek relief from the Court's discovery stay. [Doc. No. 59, Doc No. 73]. However, just as plaintiffs filed the First Amended Complaint in the midst of the briefing on motions addressed to the legal sufficiency of the original complaint, plaintiffs did the same regarding the First Amended Complaint. That is, in the midst of the briefing on

motions addressed to the legal sufficiency of the First Amended Complaint,

plaintiffs submitted the Second Amended Complaint for filing. [Doc. No. 74].

Before the Court ruled on plaintiffs' request for leave to file the Second Amended

Complaint, however, it issued two orders dismissing the claims against the federal

defendants and Agent Wiest, leaving only the claims of the unnamed *Bivens*

defendants pending. [Doc. No. 85, Doc. No. 97].

### 3.    The Second Amended Complaint and the Initiation of Discovery.

Thereafter, on March 27, 2008, the Court permitted plaintiffs to file the

Second Amended Complaint only insofar as it asserted new claims under the FTCA

against a new defendant – the United States. [Doc. No. 108]. That ruling meant

that plaintiffs' claims consisted solely of the newly asserted FTCA claims against

the United States, which up to that point had not been a party to the case, and the

*Bivens* claims against the unnamed "John Doe" defendants. The FTCA tort claims

assert state law causes of action for trespass, false imprisonment, assault, and

battery. [Doc. No. 110 (Second Amended Complaint, Counts IX - XII)]. At this

time, the Court ordered that discovery go forward. [Doc. No. 114, Doc. No. 117].

The reason for the Court's decision regarding discovery was as follows:

> "[T]he case has been pending a long, long time; and it's
> time for it either to go away completely or to go forward

6

> with discovery so that some resolution ultimately take
> place at some date in the future."

Transcript of April 11, 2008 Status Conference Proceedings at 7 (attached hereto as

Exhibit "A"). Counsel for the United States pointed out that, just as in regard to

plaintiffs' two previously filed complaints, discovery might not be appropriate due

to the legal insufficiency of the claims alleged in the Second Amended Complaint.

The Court stated in response that, in the interest of getting the case "moving," it

was not going to address that issue *at that time*. *Id.* at 8. The Court also stated,

however, that the United States could later "file a motion for protective order" and

the Court would address the issue then. *Id.*

4.    **The Third Round of Motions and the Continuation of Discovery**.

As a result of the serial and piecemeal pleading that has occurred in this

case, and because of the need, as this Court saw it, to move the case forward, the

United States, although newly added as a defendant and facing newly asserted

claims, has attempted in good faith to comply with the Court's order to begin the

discovery process prior to its responding to the Second Amended Complaint. In

that regard, the United States produced Special Agent Wiest on May 13, 2008 as

the government's Rule 30(b)(6) witness.[2] Agent Wiest provided plaintiffs with a

---

[2]The United States filed a motion for a protective order as to the breadth of
the Rule 30(b)(6) deposition [Doc. No. 125]; however, the Court largely denied

list of the names of all agents who were involved in the ICE law enforcement

action in and around Stillmore, Georgia in September 2006. *See* Exhibit "B,"

hereto (Wiest Dep. at 52-53). He also described the interaction of the agents with

plaintiffs and each one's involvement, if any, in the specific activities forming the

basis for plaintiffs' tort claims. *Id.* at 52-65, 68-74 77-88, 92-106.

Since the Rule 30(b)(6) deposition took place, plaintiffs have not sought to

amend the complaint to add the names of the agents identified at that deposition in

place of the unnamed "John Doe" defendants. Instead, plaintiffs have bombarded

the United States with onerous, repetitive, and irrelevant discovery requests that go

well beyond the issue of identifying who the unnamed "John Does" are, and even

well beyond the scope of relevancy for their tort claims against the United States.

For example, on April 18, 2008, plaintiffs served the United States with 125

separate requests for documents (First Request for Production of Documents). A

true and correct copy of the Plaintiffs' First Request for Production of Documents

is attached hereto as Exhibit "C." Plaintiffs followed this with a Second Request

for Production of Documents on May 2, 2008 (attached hereto as Exhibit "D"), a

Third Request for Production of Documents on May 16, 2008 (attached hereto as

---

the motion, stating that "[t]his is a *Bivens* action." [Doc. No. 128].

8

Exhibit "E"), and a Fourth Request For Production of Documents on June 11, 2008
(attached hereto as Exhibit "F").

In addition, on June 13, 2008, plaintiffs served the United States with eight
Notices of Depositions. [Doc. Nos. 139-146]. Tellingly, of the eight individuals
noticed, only three are agents who Agent Wiest testified were present at any of the
occurrences involving the plaintiffs. The others include individuals involved in the
overall planning of the entire enforcement action in Stillmore, Georgia, the scope
of which goes well beyond the events involving plaintiffs. These individuals are
mostly located in ICE headquarters in Washington, D.C. *See* Exhibit "B," hereto
(Wiest Dep. at 11-12). These individuals were not part of the day-to-day planning
of operations in the field, and were not present at the encounters that occurred in
and around Stillmore, Georgia with plaintiffs.[3] The relevance of their testimony to
plaintiffs' *Bivens* claims against the unnamed "John Doe" agents, or even to
plaintiffs' tort claims against the United States, is far from obvious.[4]

---

[3]The only individuals noticed for deposition by plaintiffs who interacted
with, or were present during interactions with, plaintiffs at the time of the events
giving rise to plaintiffs' claims are Ford, Sands, Blankley, and Casimero. *See*
Exhibit "B" (Wiest Dep. at 61-62, 68, 77). Interestingly, plaintiffs have not
sought the depositions of two of the agents who Wiest identified as having had
specific interaction with one or more of the plaintiffs, Agents Rodriguez and Yoo.

[4]Indeed, at the Rule 30(b)(6) deposition, Agent Wiest testified that Gary
Lang, one of the individuals whose deposition plaintiffs noticed, participated in an

## ARGUMENT AND CITATION TO AUTHORITY

The Federal Rules of Civil Procedure empower district courts to grant, where necessary, appropriate protective orders to deny, limit, or qualify discovery. Fed. R. Civ. P. 26(c). The Rules give broad discretion to district courts to control the discovery process to protect parties from undue burden and expense to promote the ends of justice. *Id.* Moreover, the Supreme Court has advised district courts "not to neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Rule 26(c)). The Supreme Court reasoned that "[w]ith this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Id.*

---

early conference call regarding the enforcement action but did not have any active role after that. *See* Exhibit B (Wiest Dep. at 32). Mr. Lang is the congressional affairs officer for ICE (*id.* at 11), and it is difficult to see what legitimate purpose plaintiffs have in naming him as one of the individuals they seek to depose in this case. It is extremely unlikely that Mr. Lang will have information relevant to, or likely to lead to admissible evidence regarding, plaintiffs' trespass, false imprisonment, assault, and battery claims, namely, regarding what transpired between the plaintiffs and the ICE agents who carried out the enforcement action in and around Stillmore, Georgia. By using three of their allotted ten depositions under the Federal Rules (*see* Fed. R. Proc. 30(2)(A)(i)) on irrelevant witnesses, it is virtually certain that the United States will be forced to seek a further protective order against future depositions that exceed the total number allowed.

The Eleventh Circuit adopts a similar interpretation of the discovery process

reasoning that the trial courts are "given wide discretion in setting the limits of

discovery," and their "judgment will be overturned only when a clearly erroneous

principle of law is applied or no evidence rationally supports the decision."

*Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

"[T]he sole criterion for determining the validity of a protective order is the

statutory requirement of 'good cause.'" *In re Alexander Grant & Co. Litigation*,

820 F.2d 352, 356 (11th Cir. 1987) (citing *Seattle Times Co. v. Rinehart*, 467 U.S.

20, 37 (1984)). Good cause is a legal term of art that can be difficult to define in

finite terms. However, the Eleventh Circuit has suggested that good cause is

satisfied when a party can show "sound" and "legitimate" reasons for seeking

judicial action. *Id.*

11

**A.    Good Cause Exists For a Protective Order Staying Further Discovery On Plaintiffs' FTCA Claims Pending The Outcome of the United States' Motion To Dismiss.**

The United States seeks a protective order from further discovery, including discovery that currently is outstanding or pending, on plaintiffs' claims under the FTCA.[5]  Good cause exists for such a stay for at least two reasons.

*First*, the stay will conserve the time and resources that would be required to respond to plaintiffs' discovery requests when that discovery ultimately may prove to be unnecessary if plaintiffs' claims are dismissed as a result of the United States' recently filed motion to dismiss.  The United States' motion to dismiss the FTCA claims presents substantial issues concerning, among other things, the timeliness of those claims, as well as the discretionary function exception to liability under that statute.  [*See* Doc. No. 148.]  As emphasized by the Eleventh Circuit, courts have broad discretion to stay discovery in cases pending before them (*Patterson v.*

---

[5]Discovery that already has occurred in this case includes the United States' Rule 30(b)(6) deposition and the United States' written responses to the First and Second Requests for Production of Documents.  Notwithstanding this motion, the United States will produce the documents as stated in its two written responses. It will produce those documents in redacted form and subject to an appropriate protective order.  The United States will provide these documents to plaintiffs as soon as agency approval for their release is obtained and a protective order is entered.  The stay sought by this motion should apply to all new and outstanding discovery requests, including but not limited to, the Third and Fourth Requests for Production of Documents and the Notices of Depositions previously served by plaintiffs on the United States.

*United States Postal Service*, 901 F.2d 927, 929 (11th Cir. 1990)), and a stay of

discovery is particularly appropriate while a court is deciding a dispositive motion

that may eliminate a claim from the litigation altogether. *See, e.g., Moore v.

Potter*, 141 Fed. Appx. 803, 807-08 (11th Cir. 2005) (affirming district court's stay

of litigation pending resolution of motions to dismiss); *Patterson*, 901 F.2d at 929

(affirming district court's stay of discovery pending outcome of Postal Service's

motion to dismiss and/or summary judgment); *see also Chudasama v. Mazda

Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) (explaining that a delay in

ruling on a motion to dismiss until after the close of discovery can impose

unnecessary costs on the parties).

   *Second*, As described *supra* at 10-11, plaintiffs have not limited their

discovery requests to information concerning what transpired between the ICE

agents and the plaintiffs during the events described in the complaint and from

which the plaintiffs' trespass, false imprisonment, assault, and battery claims arise.

Rather, plaintiffs seek information broadly concerning law enforcement techniques,

policies, and decisions concerning any aspect of ICE's investigation of the Crider

Poultry plant in Stillmore, Georgia in September 2006. Needless to say, the United

States must defend against the broad swath cut by plaintiffs' discovery requests,

and many, if not all of the documents produced and depositions taken will be

covered by a claim of law enforcement privilege.[6] Plaintiffs' discovery requests will require time-consuming and extensive review of documents for redaction of irrelevant and confidential law enforcement information. Before getting into these difficult issues that require balancing plaintiffs' need for the information sought against the governmental interest in protecting against disclosure of confidential and privileged law enforcement information, it is reasonable to ensure first that plaintiffs have viable claims on which to move forward.[7]

---

[6]Depositions of policy-makers in Washington D.C. also may raise serious issues regarding the deliberative process privilege.

[7]Discovery requests made by plaintiffs are subject to Department of Homeland Security regulations, which prevent current or former employees of the Department from providing any testimony, or supplying information contained in official files, until the employees are authorized to do so by the appropriate Department official. 6 C.F.R. § 5.41 *et seq.* Similar regulations applicable to the Department of Justice were upheld in *United States ex rel. Tohy v. Ragen*, 340 U.S. 462 (1951); *see also Boske v. Comingore*, 177 U.S. 459 (1900) (holding that the Secretary of the Treasury has the power to promulgate an order preventing collectors from disclosing tax reports). While the so-called *"Touhy"* regulations do not create any new privileges or supersede normal discovery obligations, they do impose procedural requirements on present and former Department employees, as well as on those seeking information from them. *See Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). These procedural requirements are particularly important in the area of law enforcement, if the information involved would reveal confidential sources, a special investigatory technique, or some other government secret, and further buttress the United States' argument that discovery should be stayed until after the viability of plaintiffs' claims is established.

**B.    Good Cause Exists For Staying Or Limiting Discovery On Plaintiffs' *Bivens* Claims.**

Throughout these proceedings, plaintiffs have complained that they needed discovery to identify the unnamed "John Doe" defendants in their *Bivens* claims. At the government's Rule 30(b)(6) deposition, Special Agent Wiest provided plaintiffs with the information they needed. *See supra* at 9-10. Yet plaintiffs still have not moved to add these individuals as defendants in the case. Any discovery that proceeds on the basis of the *Bivens* claims before these individuals are added to this lawsuit is fundamentally unfair to these unnamed defendants, who are not before the Court and not represented by counsel.[8]

Moreover, discovery should continue to be stayed even after these defendants are named and served to allow them to file appropriate motions to dismiss. In *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982), the Supreme Court recognized that 'broad-ranging discovery" in *Bivens* litigation is "peculiarly

---

[8]Counsel for the United States does not represent the unnamed individual "John Doe" defendants at this time. In the event that plaintiffs name those defendants, the individuals in question would have to submit a request to their employing agency for Department of Justice representation in this lawsuit. Once the agency processes that request, the Department of Justice would also need to process it pursuant to governing regulations. *See* 28 C.F.R. § 50.15 (2006). Only if and when the representation ultimately was approved by both agencies would the individual capacity defendants be entitled to be represented by counsel for the United States.

disruptive of effective government" and, accordingly, formulated an objective test specifically designed to avoid this burden. Under the objective test, the Court held, "discovery should not be allowed" until the "threshold" question of whether the government official was entitled to qualified immunity was resolved. *Id.* at 818. In *Mitchell v. Forsyth*, 472 U.S. 511 (1985), the Court reaffirmed the principles set forth in *Harlow*, holding that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* at 526. "One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.' *Harlow*, 457 U.S. at 817 (footnote omitted). For this reason, [the Supreme Court has] emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). Unless the complaint alleges, in non-conclusory (*i.e.*, specific) terms, actions which a reasonable person could not have believed lawful and which the defendant disputes having taken, discovery prior to the resolution of the claim to qualified immunity is inappropriate." *Id.* at 646-47 n.6.

16

As a general rule, the use of "John Doe" to identify a defendant is not favored by the courts. *See, e.g., Njoku v. Unknown Special Unit Staff*, 217 F.3d 840, 2000 WL 903896, *1 (4th Cir. July 7, 2000); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Moreover, the Court is not obliged "to wait indefinitely" for the plaintiffs to take steps to name and serve the "unknown" defendants. *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir. 1980). For this reason, the United States has moved to dismiss the unnamed defendants. If the Court does not dismiss these defendants, plaintiffs should be required to name them immediately so this case may proceed in a conventional fashion such that the unnamed defendants can defend themselves adequately by filing a motion to dismiss on qualified immunity grounds and seeking a stay of discovery until the qualified immunity question is resolved.[9]

---

[9]The fact that the unnamed *Bivens* defendants are entitled to a stay of discovery further bolsters the United States' arguments for a stay of discovery on the FTCA claims as well. The well established rule against discovery on *Bivens* claims until the qualified immunity issue is resolved would be meaningless if, simply by naming the United States as a defendant, the plaintiff could achieve precisely the disruption and impose exactly the same burden which the Supreme Court expressly disapproved. The public interest in avoiding this result outweighs any interest plaintiffs may have in pursuing discovery against a non-immune defendant or against the same defendants on a claim for which immunity is not available.

17

Finally, to the extent that plaintiffs may argue that they do not have
sufficient information, even after Agent Wiest's deposition, to name the "John
Doe" defendants, a protective order should be entered staying all discovery on the
*Bivens* claims *except* limited discovery to further identify the unnamed defendants.
In addition, the type of discovery on this limited issue should be specifically
defined as interrogatories addressed to the agents named by Special Agent Wiest as
having been present at the scene where the agents' interactions with plaintiffs took
place.

Rule 26(c)(1)(D) provides that the Court may enter a protective order
"forbidding inquiry into certain matters, or limiting the scope of disclosure or
discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). Rule 26(c)(1)(C) further
provides that the Court may enter a protective order "prescribing a discovery
method other than the one selecting by the party seeking discovery." Fed. R. Civ.
P. 26(c)(1)(C). Interrogatories are the least intrusive and burdensome means for
establishing the identity of "John Doe" defendants. Requiring their use also
ensures that discovery does not stray beyond the limited purpose of identification.
These limitations sought by the United States on plaintiffs' discovery on their
*Bivens* claims are reasonable and should be entered for good cause shown above.

18

## CONCLUSION

For the foregoing reasons, the Court should enter a protective order staying further and pending discovery in this case. The Court should allow limited discovery only, in the form of a specified number of interrogatories seeking information solely for identification purposes, should plaintiffs demonstrate a specific need for such limited discovery to enable them to name the "John Doe" defendants.

June 18, 2008                         Respectfully submitted,

                                      DAVID E. NAHMIAS
                                      UNITED STATES ATTORNEY

                                      /s Alonso Long
                                      Alonso H. Long
                                      Ga Bar. No. 402502
                                      ASSISTANT U.S. ATTORNEY
                                      600 U.S. Courthouse
                                      75 Spring Street, SW
                                      Atlanta, Georgia 30303
                                      (404) 581-6067

                                      Lynn D. Thesing
                                      Ga Bar No. 740110
                                      ASSISTANT U.S. ATTORNEY
                                      600 U.S. Courthouse
                                      75 Spring Street, SW
                                      Atlanta, Georgia 30303
                                      (404) 581-6189

19