# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **MANCHA, et al.,** | \| |
| | \| |
| **Plaintiffs,** | \| |
| | \| |
| **vs.** | \|     **1:06-CV-02650-TWT** |
| | \| |
| | \| |
| **IMMIGRATION AND CUSTOMS** | \| |
| **ENFORCEMENT, et al.,** | \| |
| | \| |
| **Defendants.** | \| |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER

Plaintiffs seek a limited protective order under Fed.R.Civ.P. 26(c) and 30(d) prohibiting inquiry by defendants into the immigration status or immigration history of witnesses and allowing certain witnesses to proceed pseudonymously.  Specifically, the Plaintiffs request that this Court issue a protective order prohibiting Defendants from: (1) engaging in any inquiry, discovery, or investigations of witnesses' past or present immigration status; (2) engaging in any inquiry, discovery, or investigations into evidence related to the actual residence, or past or present place of work, or other information that would identify individuals testifying pseudonymously; (3) taking any enforcement actions against any individuals as a result of

1

information gained through this litigation.  In addition, Plaintiffs request that this Court grant the protective order to limit the oral testimony of certain non-citizen witnesses to telephonic depositions, rather than in-person depositions, and that those non-citizen witnesses be permitted to proceed pseudonymously.

## **BACKGROUND**

This action challenges a series of raids conducted by federal immigration authorities in the Southeast region of Georgia over the course of a two week period in September of 2006.  Plaintiffs allege that, in violation of the Fourth and Fifth Amendments of the U.S. Constitution, federal agents entered and searched private homes without any lawful authority to do so, detained and interrogated people merely because they looked "Mexican," used excessive and wholly unnecessary force against some of the persons they detained, and destroyed private property without cause.

Several Plaintiffs and witnesses were physically assaulted by the Defendants and/or intimidated by their use of force when they were unlawfully detained.  For example, Plaintiff Perez was physically attacked outside of his home by one of the Defendants, who grabbed him by the front of the shirt, jammed a gun into his side and threw him against his truck while twisting his arm behind his back.  See Ex 1, Affidavit of Ranulfo

Perez ¶ 4. Similarly, Plaintiff Mancha entered her living room to find five Defendants had broken into her home and at least one of the Defendants had his hand on his gun as if he was ready to take it out at any minute. <u>See</u> Ex 2, Affidavit of Marie Justeen Mancha ¶¶ 3-5. Affiant Refugio Gudino had his car blocked in by four Defendants who parked their car perpendicularly in front of his, got out of the car and quickly approached his car with their hands on their guns as if they were going to pull them out at any moment. Ex. 3 (Gudino Aff. ¶ 2).

Additional individuals who have been identified by Plaintiffs in their Initial Disclosures by pseudonym were witnesses to intimidation tactics and the use of force used by Defendants. Affiant "M" witnessed several Defendant ICE agents kick in a trailer door, enter without asking for permission, and physically push three Latina women out of the trailer. Ex. 4 (M. Aff. ¶ 6). Affiant "D" witnessed several Defendants with their guns drawn during a raid at his trailer park. Affiant D saw one of the Defendants pointing a gun at the window of a small car parked outside his trailer and also witnessed a Defendant break one of his bedroom windows by hitting it with the butt of a gun. Ex. 5 (D. Aff. ¶¶ 4, 7). Neither of these witnesses is willing to come forward to tell his story in the absence of a protective order.

Collectively, these acts of force and intimidation by the Defendants had the effect of terrorizing the Latino community of Southeast Georgia. Since the incidents in September 2006, many Plaintiffs and witnesses have suffered from nightmares and anxiety from the trauma of the events. See, e.g., Ex. 4 (M. Aff. ¶ 8) ("For a few months after the incidents…I was unable to sleep. I have had head aches from the stress of what I saw that day in the trailer park. I still have nightmares from what I saw that day. I feel the incidents have caused me irreparable harm and that my nightmares will bother me until the last days of my life."). Children and minors were also present during these raids and witnessed acts which left them intimidated and afraid of law enforcement generally, and the Immigration and Customs Enforcement agency in particular. Plaintiff Mancha, a teenager, was extremely frightened when she found the Defendants had entered her home without permission and upon seeing at least one of them with their hand on their gun. Ex 2 (Mancha Aff. ¶ 5) Affiant M's son has nightmares about the Defendants. Ex 4. (M. Aff. ¶ 8). Affiant Gudino's son, who was 8 years old at the time of the raids, was traumatized when the Defendants surrounded his father's car with their hands on their guns. Since the incident, his son is afraid of quick movements and of the police. (Gudino Aff. ¶ 7).

The trauma and fear caused by these raids has discouraged witnesses from coming forward to testify about what they saw.  Potential witnesses reasonably believe that the Defendants – who have the legal power to arrest and initiate removal proceedings against them -- will retaliate if they participate in this case.  Affiants M and D, for example, have expressed concerns that the Defendants will return and terrorize their family and community again. They also fear that they will be targeted by the Defendants for telling their stories.  Ex. 4 (M Aff. ¶ 9); Ex. 5 (D Aff. ¶ 9).  Other witnesses are also afraid to testify or speak to anyone about what they saw during the raids.  Ex. 4 (M Aff. ¶ 10).  Even witnesses who are legal permanent residents are afraid to testify about what they saw because they are worried that the Defendants will retaliate against them.  Ex. 3 (Gudino Aff. ¶ 9 ).

Based on these facts, a protective order limiting inquiry into immigration status and immigration history and protecting the identity of certain witnesses is necessary to protect Plaintiffs and witnesses from unnecessary intimidation and humiliation, protect them from retaliation by the Defendants, and to ensure that Plaintiffs' claims will be heard.  Plaintiffs have listed 6 potential witnesses, including M and D, as John Does 1-4 and

Jane Doe 1-2 on their Initial Disclosures, pending resolution of this

Protective Order motion.  The John Does include Affiants M and D.

Pursuant to Fed. R. Civ. P. 26(c) ,Plaintiffs have attempted to reach an

agreement with Defendants regarding a mutually acceptable protective order

in this matter; however, the parties have been unable to reach such an

agreement.  Because these discussions have been futile, Plaintiffs have no

recourse but to petition this Court to rule on this matter.

## ANALYSIS

**I.     The Court Has Broad Power to Grant Protective Orders as the Interest of Justice Requires.**

The Court has the broad authority to issue protective orders pursuant

to Fed. R. Civ. P. 26(c) and 30(d).  Rule 30(d) provides that if a deposition

"is being conducted in bad faith or in such manner as unreasonably to annoy,

embarrass, or oppress the deponent or party, the court…may limit the scope

and manner of the taking of the deposition as provided in Rule 26(c)." Fed.

R. Civ. P. 30(d)(4).  Rule 26(c) provides in relevant part that to "protect a

party or person from annoyance, embarrassment, oppression or undue

burden or expense" the Court may take measures to ensure that certain

"disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). Courts are

also permitted to limit disclosure or discovery to "specified terms or

conditions." Fed. R. Civ. P. 26(c)(2).  Finally, the court may, upon a

showing of good cause by the moving party, make an order "that certain

matters not be inquired into…." Fed. R. Civ. P. 26(c)(4).

Courts have repeatedly recognized "the power to enter protective

orders limiting discovery as the interests of justice require."  Degen v.

United States, 517 U.S. 820, 826 (U.S. 1996), superseded by statute, Civil

Asset Forfeiture Reform Act, 18 U.S.C. § 893 (2000).  The Supreme Court

has stated that "[t]he unique character of the discovery process requires that

the trial court have substantial latitude to fashion protective orders," and thus

that "Rule 26(c) confers broad discretion on the trial court to decide when a

protective order is appropriate and what degree of protection is required."

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (U.S. 1984); see also, In re

Alexander Grant & Co. Litigation, 820 F.2d 352, 357 (11th Cir. 1987) ("[a]

district court has broad discretion when fashioning protective orders.").

Many courts have granted orders similar to the one Plaintiffs seek in

this Motion in order to protect the moving party from intimidation and

harassment and to ensure that they can pursue their legal rights.  See, e.g.,

Lozano v. City of Hazelton, 239 F.R.D. 397 (M.D. Pa. 2006) (granting an

order protecting the identity and immigration status of Doe plaintiffs based

on fear of removal, fear of becoming targets of anti-immigrant sentiment in

the community, and the court's concern that such fear would cause plaintiffs to abandon the suit); Lozano v. City of Hazelton, 496 F. Supp. 2d. 477, 105 (M.D. Pa. 2007) (permitting plaintiffs to proceed pseudonymously to allow them to avoid harassment, intimidation, and to prevent plaintiffs from abandoning assertion of their rights); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1075 (9th Cir. 2004) (upholding protective order granted by the district court prohibiting all discovery into plaintiff's immigration status because of the chilling effect such discovery could have upon the ability of such plaintiffs to effectuate their rights).

II.    Plaintiffs Can Show Good Cause for a Protective Order Prohibiting Inquiry into Witnesses' Immigration Status and Other Information and Prohibiting Enforcement Actions As a Result of Information Gained Through This Lawsuit.

Pursuant to Fed. R. Civ. P 26(c), the party seeking a protective order must show good cause. Federal courts have used a balancing-of-interest approach to determine whether good cause exists. Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). "This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." Chi. Tribune Co. v. Bridgestone/Fires one, Inc., 263 F.3d 1304, 1313 (11th Cir. 2001); see also Williams v. Art Inst., 2006 U.S. Dist. LEXIS 62585, at *35 (N.D. Ga.

2006) ("To determine good cause, federal courts have imposed a balancing the interests approach such that courts balance the non-movant's interest in obtaining the information against the movant's interest in keeping the information private.").

Here, Plaintiffs' interest in keeping confidential the immigration status and history of witnesses far outweighs the Defendant's interest in inquiring into these matters. Likewise, Plaintiffs' interest in keeping anonymous the identities of certain witnesses and limiting their depositions to telephonic appearances is far greater than Defendants' interest in knowing those identities and their need to depose them in person.

Plaintiffs, seek to prevent discovery of this information in order to protect witnesses from harassment and intimidation and to avoid the *in terrorem* effect that will result if this information is revealed. The protective order is also needed to prevent retaliation, including arrest, detention and deportation from the United States. Denial of a protective order is likely to cause some witnesses to decline to provide testimony in the lawsuit. At the same time, this information sought to be protected is irrelevant to the constitutional claims raised by Plaintiffs and witnesses. Thus, in balancing of the parties' interests, the Court should grant the protective order Plaintiffs seek.

**A. Disclosure of Highly Sensitive Immigration Status and History of Witnesses Are Will Embarrass, Harass, and Intimidate Them**

In issuing protective orders in cases similar to this one, courts have recognized that immigration status is a matter of private interest, the discovery of which is often intended to, or has the effect of, embarrassing, intimidating or harassing a party.  In EEOC v. First Wireless Group, Inc., the court upheld an order protecting plaintiff's immigration status from discovery, in part because "[i]mmigration status discovery in cases where plaintiffs are possibly undocumented is a very sensitive area of inquiry" and "[d]iscovery of immigration status…is a potential weapon for harassing and intimidating individuals." 2007 U.S. Dist. LEXIS 11893, at *8-9 (E.D.N.Y. 2007).  In In re Reyes, the Fifth Circuit held that the district court had erred in ordering discovery into plaintiffs' immigration status in part because of the "embarrassment and inquiry into their [plaintiffs] private lives which was not justified…."  814 F.2d 168, 171 (5th Cir. 1987), cert. denied, 489 U.S. 1011 (1989).  In Avila-Blum v. Casa De Cambio Delgado, Inc., the court notes that inquiry into plaintiff's immigration status causes a "substantial social burden…on the individual involved." 236 F.R.D. 190, at *192 (S.D.N.Y. 2006); see also, Rengifo v. Erevos Enterprises, Inc., 2007 U.S. Dist. LEXIS 19928, at *4 (S.D.N.Y 2007) ("discovery of [immigration

status] would have an intimidating effect on an employee's willingness to assert his workplace rights.").

### B. The Proposed Protective Order Would Safeguard Witnesses from Significant and Irreparable Harm

Many courts have recognized that allowing discovery into immigration status has a chilling effect on the ability of both documented and undocumented immigrants to pursue their legal rights. In Rivera v. NIBCO, Inc., the court noted that "[g]ranting employers the right to inquire into workers' immigration status in cases like this would allow them to raise implicitly the threat of deportation and criminal prosecution every time a worker, documented or undocumented, reports illegal practices…." 364 F.3d 1057, 1065 (9th Cir. 2004). In Topo v. Dhir, the court found that plaintiff's fear of inquiry into her immigration status was "well-founded," and thus held that the "potential danger of deterring plaintiff from having her day in court by inquiring into a non-relevant matter such as her immigration status is precisely the type of 'oppression' Rule 26(c) was designed to prevent." 210 F.R.D. 76, 78-79 (S.D.N.Y 2002).[1] Here, the fear of retaliation is even

---

[1] See also Galaviz-Zamora v. Brady Farms, Inc., 230 F.R.D. 499, 502 (W.D. Mich. 2005) ("merely requesting information regarding the employees' immigration status had demonstrable (and prejudicial) effect.") (citation omitted); Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (denying Defendant's request for discovery into plaintiff's immigration status, noting that even if there was a confidentiality agreement "there would still remain the danger of intimidation, the danger

more compelling, given that the Defendants themselves are the agency and its agents charged with arresting, detaining, and deporting undocumented persons. Some courts have noted that the chilling effect of discovery into immigration status may even deter *documented* immigrants from pursuing their employment and civil rights. See, e.g., Rivera, 364 F.3d at 1065 ("Even documented workers may be chilled by the type of discovery at issue here. Documented workers may fear that their immigration status would be changed….Any of these individuals, failing to understand the relationship between their litigation and immigration status, might choose to forego civil rights litigation."). Indeed, potential witnesses in this case are reluctant to testify for fear that they will jeopardize their immigration status, despite the fact that they are documented immigrants. See Ex. 3 (Gudino Aff. ¶ 1, 9) ("I am a legal permanent resident…. I have talked to many other Latinos in my community, both people who are legal residents and people who are

---

of destroying the cause of action and would inhibit plaintiffs from pursuing their rights.") (citation omitted); Flores v. Albertsons, Inc., 2002 U.S. Dist. LEXIS 6171, at *20 (C.D. Cal. 2002) ("there is an *in terrorem* effect to the production of such documents. It is entirely likely that any undocumented class member forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face…potential deportation."); EEOC v. City of Joliet, 239 F.R.D. 490, 493 (N.D. Ill. 2006) ("The intimidating effect of such conduct [inquiry into immigration status] is hard to exaggerate. This step alone might be sufficient to end the lawsuit regardless of the merits of the case."); De La O v. Arnold-Williams, 2006 U.S. Dist. LEXIS 76816, at *10 (E.D. Wash. 2006) ("The Court finds compelling the concern…that requiring the Plaintiffs to disclose their immigration status would cause a chilling effect on similar civil rights actions.").

undocumented, who…were witnesses to the raids in the Stillmore are in September 2006.  Many of these people are afraid to come forward and testify about what they saw for fear that they will be retaliated against by the Defendants.  I think it is important for the court to hear my testimony and for this reason I have provided this affidavit.").

Allowing discovery into the immigration status or history of witnesses in this case will only serve to harass and intimidate them, thereby deterring them from testifying or further participating in this case. See Ex. 4 (M Aff. ¶ 9) ("I am worried that my family and I could be targeted by the Defendants for telling my story in this form … I am afraid of retaliation from the Defendants and I do not feel comfortable participating in this case without a guarantee that I will not be targeted.").

### C. The Information Sought to Be Protected in this Motion is Irrelevant to the Determination of Whether Plaintiffs' and Witnesses' Rights Were Violated

Courts have consistently found immigration status irrelevant to the assertion of rights under federal employment and labor statutes, and have issued protective orders preventing inquiry of that nature.  In re Reyes, 814 F.2d at 171 (Fair Labor Standards Act case where the court issued a writ of mandamus to restrain the trial court from compelling discovery on the plaintiffs' immigration status); Cortez v. Medina's Landscaping, 2002 U.S.

Dist. LEXIS 18831, at *2-3 (N.D. Ill. 2002) (denying motion to compel immigration status information because such status was not relevant to the Fair Labor Standards Act claims at issue); Topo, 210 F.R.D. at 79 (granting protective order and noting that "at best, plaintiff's immigration status is a collateral issue not relevant to any material aspect of the case."); Flores v. Amigon, 233 F. Supp. 2d 462, 464-65 (E.D.N.Y. 2002) (granting protective order because discovery related to Plaintiff's immigration status was not relevant and "even if it were, the potential for prejudice far outweighs whatever minimal probative value such information would have.").

Courts have similarly held that immigration status is not relevant to the assertion of rights under Title VII of the Civil Rights Act of 1964, and have issued protective orders prohibiting inquiry into such matters.  Rivera, 364 F.3d at 1075 (upholding protective order granted by the district court because immigration status was not "relevant to the determination [of] whether a defendant has committed national origin discrimination under Title VII."); First Wireless Group, Inc., 2007 U.S. Dist. LEXIS 11893 at *13 (denying defendant's motion to set aside a protective order prohibiting discovery into immigration status because such information was not relevant at the liability state of the litigation).

Even where courts have determined that immigration status may be relevant, they have granted protective orders where the "chilling" or "*in terrorem*" effect of inquiring into the immigration status of a party outweighs the probative value of the information sought in discovery. <u>See, e.g.</u>, <u>First Wireless Group, Inc.</u>, 2007 U.S. Dist. LEXIS 11893 at *8 ("In most cases…the in terrorem effect of the proposed inquiry outweighs the probative valued of the discovery."); <u>Rivera</u>, 364 F.3d at 1065 ("The chilling effect such discovery [immigration status] could have on the bringing of civil rights actions unacceptably burdens the public interest."); <u>Topo</u>, 210 F.R.D. at 78 (S.D.N.Y. 2002) ("When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined.").

Here, Plaintiffs are seeking to vindicate their Fourth and Fifth Amendment rights and to assert claims under the Federal Tort Claims Act and are challenging the policies and practices of Defendant to prevent egregious unconstitutional actions from reoccurring in their community. Just as in the employment context, questioning into the identity, immigration status or immigration history of witnesses will have a chilling effect on the willingness of such witnesses to come forward and testify, and consequentially Plaintiffs' ability to effectively pursue their claims.

As the court noted when granting the protective order in <u>Lozano</u>, "this case involves the constitutional and statutory rights asserted by the plaintiffs…[t]his is not an action to enforce United States immigration laws." <u>Id.</u> at 10.  The immigration status and history of witnesses has no bearing on the constitutional rights asserted by Plaintiffs in this case and the determination of whether Defendants violated the constitutional rights of Plaintiffs and witnesses.   The Court must thus enter a protective order to protect the identities of witnesses and to ensure that participation in this suit does not lead to enforcement actions by the Defendant.

## II. Plaintiffs Can Show Good Cause for an Order Protecting the Identity of Witnesses

Plaintiffs also seek to protect the identity of certain witnesses to allow them to testify pseudonymously at their depositions.  Specifically, Plaintiffs seek to have certain non-citizen witnesses' identities protected through filing affidavits using pseudonyms, conducting telephonic depositions and preventing Defendants' inquiry, discovery, or investigations into any documents, things, information and testimony containing information about such anonymous witnesses' actual residence, or present or past place of work, or other information that would allow them to be identified.

### a.  Permission to Proceed Pseudonymously is Discretionary

Courts may exercise discretion over whether to grant an individual the opportunity to participate in a lawsuit using a pseudonym. *Doe v. Barrow County,* 219 F.R.D. 189, 191 (N.D.G.A. 2003). Fed. R. Civ. P. 26, which has been used to grant protective orders for the purpose of maintaining anonymity, applies not only to a party to a lawsuit but also to other "person[s] from whom discovery is sought." Both parties and witnesses have been allowed to participate in lawsuits using pseudonyms in order to encourage them to give full and truthful testimony. *See* <u>In re: Grand Jury Proceedings vs. United States of America</u>, 995 F. 2d. 1013, 1015 (11th Cir 1993) (protective orders are necessary to allow witnesses the ability to give uninhibited essential testimony in civil litigation) (citations omitted); *see also* <u>James v. Cecil</u>, 6 F. 3d. 233, 242 (4th Cir. 1993) (discussing the occasional need for federal courts to "yield" to a party or witness' need to participate in open trials anonymously).

When making this determination, courts weigh the public's interest in obtaining complete information relating to the judicial proceedings against the individual's privacy interests. <u>See Doe v. Stegall,</u> 653 F. 2d. 180, 185 (5th Cir. 1981) (allowing Does to proceed under fictitious names after balancing the privacy interests against the presumption of openness in judicial proceedings). Circumstances under which protective orders have

been granted have involved "matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity." <u>Does I-V v. Rodriguez</u>, 2007 WL 684114 (D. Colo. 2007)(allowing plaintiffs to proceed pseudonymously where they feared retaliation by defendants); <u>See also Does I-XXIII v. Advanced Textile Corp.</u>, 214 F. 3d 1058, 1068(9th Cir. 2000)(affirming that pseudonyms are permitted to protect from harassment, injury, ridicule, or personal embarrassment)(citations omitted).

Protective orders have been granted to allow individuals concerned about their immigration status to proceed pseudonymously.  "Courts have found that plaintiffs could proceed anonymously because they fear that revealing their true identities would lead to physical violence, deportation, arrest in their home countries and retaliation against the plaintiffs' families for bringing suit." <u>Lozano</u>, 496 F. Supp. 477 at 75.  Courts have similarly held that the general rules regarding parties' anonymity apply equally to witnesses.  See e.g. <u>James v. Jacobson, 6 F.3d 233, 242 (4th Cir. 1993)</u> ("Federal courts traditionally have recognized that in some cases the general presumption of open trials--including identification of parties and witnesses by their real names--should yield in deference to sufficiently pressing needs for party or witness anonymity.")

In sum, protective orders granting an individual to proceed pseudonymously have been granted where defendants are not hindered and the individual's privacy rights outweigh the need for open judicial proceedings. See Stegall, 653 F.2d. at 185; see also Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir. 2000) (reversing denial of motion to proceed under fiction names because of plaintiffs' reasonable fear of severe retaliation; defendants were not prejudiced by not knowing the identities of plaintiffs and the public interest in the case could be satisfied without revealing plaintiff's identities).

Here, Plaintiffs are requesting permission to allow certain witnesses to testify pseudonymously at their depositions.  These witnesses are not seeking to be joined as Plaintiffs in their individual capacities or to represent the putative class.  As such, Federal Rules that require plaintiffs to disclose their names and concerns about First Amendment interests in ensuring the openness of the judicial process to the public are not present here.  See Stegall, 653 F.2d at 185; Fed. R. Civ. P. 10(a).

Fear of retaliation for testifying in this case is deep and understandable.  Non-citizen witnesses in this case are afraid that if their identities are revealed, they will be targeted by Defendants for removal.  See Ex. 3 (D. Aff. ¶ 9) ("While I believe that it is important to tell the truth about

19

what I saw, I am worried that the Defendants will come after my family and me for having told what I saw during the raids in September."); Ex. 4 (M. Aff. ¶ 1) ("I have agreed to sign this affidavit anonymously because I fear retaliation from immigration, ICE, who are some of the Defendants in this lawsuit. I would not be comfortable signing this document if I had to provide identifying information that would identify and locate me.")

Failure to permit these witnesses to use fictitious names would chill their ability to participate in this case and to provide full and truthful information regarding the facts surrounding the immigration raids at issue here. Therefore, Plaintiffs request that this Court weigh the factors generally considered when determining whether to allow individuals to proceed using a pseudonym to determine whether to permit the proposed class members to participate anonymously.

### b. Factors considered when granting anonymity

No specific requirements dictate whether a Court should permit anonymity. <u>Stegall</u>, 653 F. 2d. 180, 185 (5th Cir. 1981). Courts have, however, have taken several factors into account when making this determination. Those factors include whether:

    1) plaintiffs seeking anonymity were suing to challenge a government entity;

    2) prosecution of the suit compelled plaintiffs to disclose
information "of the utmost intimacy;" and

    3) plaintiffs were compelled to admit their intention to engage in
illegal conduct, thereby risking criminal prosecution.

Id. In adopting the *Stegall* test, the Eleventh Circuit has stated that:

> [t]he enumerated factors in *Stegall* were not intended as a "rigid,
> three-step test for the propriety of party anonymity." Nor was the
> presence of one factor meant to be dispositive. Instead, they were
> highlighted merely as factors deserving consideration. A judge,
> therefore, should carefully review *all* the circumstances of a given
> case and then decide whether the customary practice of disclosing
> the plaintiff's identity should yield to the plaintiff's privacy
> concerns.

Doe v. Frank, 951 F.2d 320  (11th Cir. 1992).

### 1. Plaintiffs are Challenging a Government Entity

Pursuant to 6 U.S.C. §252, the Bureau of Border Security [Bureau of
Immigration and Customs Enforcement] was created to perform or oversee
the functions delegated to it by the Secretary for Border and Transportation
Security.  6 U.S.C. §252(3)(a)(2007).  Accordingly, this includes, but is not
limited to, performing all functions related to investigations, detentions and
removal.  6 U.S.C. §251(2007).  The Defendants have the authority to
initiate the steps to have potential witnesses investigated, arrested, detained
and removed based on discovery of their identity alone.

Witnesses who wish to testify in this matter have already been
terrorized and intimidated by Defendants in the actions alleged in the

Complaint.  They also witnessed specific acts of brutality and force by Defendants.  <u>See</u> Ex. 4 (M. Aff. ¶ 4-5) ("I saw a small car pull into the trailer park with loud music…. One of the [defendant's] cars spun a fast turn and parked in front of the small car, blocking it there.  Immediately one of the Defendant ICE agents exited the unmarked car and walked quickly towards the small car with a pistol in his hand…. A Latino man got out of the small car and the Defendant pushed him into his unmarked car with his hands.  The Defendant continued to point his gun at the Latino man until he was in the Defendant's unmarked car."); Ex. 5 (D. Aff. ¶ 6-7) ("For a few hours that morning these people were knocking on the walls, doors, and windows of my trailer…. One of the Defendant ICE agents knocked on the window so hard that s/he broke it.  I could see that the agent was knocking on the window with the butt of the gun s/he was holding in his/her hand.").

Given potential witnesses' fear of coming forward and participating in this case for challenging governmental action, an order protecting the identity of certain witnesses is necessary to ensure that the Court can hear their testimony and be presented with the full merits of the case.

**2.  Immigration Status Is Highly Intimate Information That Is Irrelevant To These Proceedings**.

Immigration status is a highly sensitive and intimate matter.  Failure to grant this protective order would put individuals at risk for harassment,

backlash, intimidation, threats of harm and retaliation, embarrassment, and humiliation. The district court recognized this point in <u>Lozano, when it</u> found that the plaintiffs presented a "dire" need to remain anonymous due to the intense public interest in the lawsuit and the risk of revealing sensitive information like one's immigration status. <u>Lozano,</u> 496 F. Supp. 2d 477 at 85. The impact on the witnesses' "basic rights to shelter, education, and a livelihood" as a result of revealing one's immigration status are compelling factors to merit proceeding anonymously. <u>Id.</u> at 81. Anonymity is necessary in certain cases not only to protect an individual's immigration status but also to generally protect their identities as participants in the lawsuit. In fact, the Court found in <u>Lozano</u> that anonymity was necessary because of the "harassment and intimidation that created fear even among those with a more secure social and legal status than the anonymous plaintiffs." <u>Id.</u> Failure to permit individuals to proceed anonymously will cause individuals to abandon assertion of their rights if they are forced to reveal their identity. <u>Id.</u>

The instant case is even more compelling than the facts in <u>Lozano,</u> where defendant was the local municipality. Here, the defendant is the U.S. government, and the relevant defense witnesses are agents of Immigration

and Customs Enforcement, the agency charged with enforcement of immigration laws.

The witnesses should also be permitted to give oral deposition testimony telephonically. They will fear arrest by ICE agents if they appear in person at the deposition. Therefore, the Plaintiffs request that this Court allow certain witnesses to use pseudonyms and to testify via telephonic depositions.

### 3. Fear Of Civil And Criminal For Violation Of Immigration Laws Will Hinder Witness Participation.

The final factor considered when granting anonymity relates to whether an individual will be forced to reveal their intention to commit a crime, thereby risking criminal prosecution. Stegall, 653, F. 2d. at 185. Here, the threat of civil and criminal consequences for violating the immigration laws of our country is sufficient to keep individuals from participating as witnesses in this case.[2]

Based on the above factors, certain witnesses should be permitted to participate in this action pseudonymously and via a telephonic depositions.

---

[2] In addition to the three factors listed above, courts have also considered other factors, such as age, motive of the moving party, and the legal nature of the case when deciding whether to grant a protective order on these grounds. Stegall, 653 F. 2d 180 at 185; and Lozano, 496 F. Supp. 477 at 79-103.

III.    **The Proposed Protective Order Is Narrowly Tailored to Limit Discovery Only to the Extent Necessary to Protect the Rights of Plaintiffs and Witnesses**

Plaintiffs recognize that the details surrounding particular encounters between witnesses and Defendants are obviously relevant, and do not intend to unreasonably limit questioning on those incidents. But the purpose of that questioning should be to determine whether Plaintiffs' rights were violated. This motion seeks only to limit Defendants' questioning of witnesses' immigration status and immigration history, as well as to protect the identity of certain witnesses.

## CONCLUSION

Plaintiffs seek to protect confidential information of witnesses. This information is irrelevant to the determination of whether Plaintiffs' constitutional rights were violated by the Defendants. If the information sought to be protected is disclosed, there is a likelihood that witnesses will become intimidated and fearful and will not participate in this lawsuit. Such an outcome would prevent this Court from hearing the testimony of important witnesses and hinder Plaintiffs' ability to fully present their claims to this Court.

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for a Protective Order.

Respectfully Submitted, [3]


 s/ Mary C. Bauer
Mary C. Bauer
GA Bar No. 142213
Daniel Werner
*Pro Hac Vice,* NY SBRA 3969839
Mónica Ramírez
*Pro Hac Vice*, FL Bar No. 0711861
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
Southern Poverty Law Center
233 Peachtree Street, Suite 2150
Atlanta, GA 30303
Phone: 404-521-6700
Fax:  404-221-5849

Kelley M. Bruner
*Pro Hac Vice*, AL Bar No. 8115-K74B
Rhonda Brownstein
*Pro Hac Vice*, AL Bar No. 3193-064R
Morris Dees
*Pro Hac Vice*, AL Bar No. 7003-E50M
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue

Paul L. Hoffman
*Pro Hac Vice*, CA Bar No. 071244
SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, California 90291
(310) 396-0731
(310) 399-7040 (fax)

---

[3] Pursuant to L.R. 7.1D, the undersigned certifies that this pleading complies with the font and point selections permitted by L.R. 5.1B. This Motion was prepared using the Times New Roman 14 point typeface.

Brian Spears
**GA Bar No. 670112**
LAW OFFICE OF BRIAN SPEARS
1126 Ponce de Leon Avenue, NE
Atlanta, Georgia 30306
(404) 872-7086
(404) 892-1128 (fax)
ATTORNEYS FOR PLAINTIFFS